[NOT FOR PUBLICATION]  [Doc. No. 49]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

LAUREN ZURGA, et al.,

    Plaintiffs,

    v.

BURDETTE TOMLIN MEMORIAL
HOSPITAL, et al.,

    Defendants.

Civil No. 04-3634 (RMB)

**OPINION**

Appearances:
Eugene D. McGurk, Jr., Esquire
Raynes, McCarty, Binder, Ross & Mundy, Esqs.
116 White Horse Pike
Haddon Heights, New Jersey 08035
(856) 854-1556
    Attorney for Plaintiff Lauren Zurga

Robert Emil Paarz, Esquire
The Paarz Law Firm, LLC
Linwood Greene
210 New Road, Suite 17
Linwood, New Jersey 08221
(609) 601-8600
    Attorney for Plaintiff Nicholas Zurga

Timothy M. Crammer, Esquire
David J. Bishop, Esquire
Crammer Bishop, PC
508 New Jersey Avenue, Suite B3
Absecon, New Jersey 08201
(609) 677-6996
    Attorneys for Defendant Burdette Tomlin Memorial Hospital


Jay J. Blumberg, Esquire
Blumberg and Lindner, LLC
45 South Broad Street
P.O. Box 68

Woodbury, New Jersey 08096
(856)848-7472
    Attorney for Defendant Raymond Cascarino, D.O.

Richard A. Grossman, Esquire
Grossman & Heavey
1608 Highway 88 West, Suite 200
Brick, New Jersey 08724
(732) 206-0200
    Attorney for Defendant Manish K. Singh, M.D.

**BUMB**, United States District Judge:

    This matter comes before the Court upon a motion by Defendant Manish K. Singh, M.D. ("Singh"), for reconsideration of this Court's Order of April 24, 2007, denying Defendants Singh and Burdette Tomlin Memorial Hospital partial summary judgment. Plaintiffs, Lauren Zurga and Nicholas Zurga, brought suit alleging these and other Defendants were negligent in their treatment of Lauren Zurga when she presented at Burdette Tomlin Memorial Hospital with stroke symptoms.  For the reasons discussed below, Defendant's motion will be denied.

I.   Statement of Facts

    The facts are heavily contested but can be summarized, for purposes of this motion as follows.  On August 11, 2002, Plaintiff Lauren Zurga ("Plaintiff" or "Ms. Zurga") and her husband Nicholas Zurga were staying with family and friends in Avalon, New Jersey.  That morning, at approximately 7:30 a.m., Plaintiff's child reported to the other adults in the home that

his mother needed help.  Plaintiff was found sitting on her bed unresponsive.  Help was summoned and Ms. Zurga was brought to the emergency room of Defendant Burdette Tomlin Memorial Hospital ("BTMH").  The emergency room physician who cared for Ms. Zurga, Defendant Raymond Cascarino, D.O. ("Cascarino"), suspected that Ms. Zurga had a stroke.

Defendant Cascarino ordered a CT scan of Ms. Zurga's head to determine whether there was any intracranial bleeding.  The CT scan showed that Ms. Zurga did not have any intracranial bleeding.  Because there was no bleeding, the administration of a clot busting medication, tPA, and whether or not to give it, became an issue.

The medical consensus is that thrombolytich agents such as tPA should not be administered to stroke patients if more than three hours have elapsed since the onset of symptoms.  Accordingly, assuming that the onset of Ms. Zurga's symptoms occurred at 7:30 a.m., a fact hotly disputed, the last opportunity to administer thrombolytich agents to Ms. Zurga would have been at 10:30 a.m.  After Defendant Cascarino received reports of the CT Scan, he telephoned Defendant Manish Singh, M.D. ("Singh"), the "on-call" neurologist at BTMH.  Pursuant to the hospital's policies, Defendant Singh was required to respond to emergency room calls within thirty minutes.

There is contradictory testimony regarding the telephone

conversations between Defendants Cascarino and Singh. Defendant Singh claimed to Cascarino that he was more than an hour away from the hospital, and would not have been able, upon any circumstances, to arrive at the hospital before 10:30 a.m., assuming the onset of symptoms began at 7:30 a.m. However, Defendant Cascarino testified in his deposition that Defendant Singh later admitted to him that he was not an hour away from the hospital but was, in fact, in Cape May Courthouse - the very town in which the hospital is located.

Singh never responded to treat Plaintiff, and Plaintiff was not treated with tPA. Plaintiff contends that this and other negligence on the part of the Defendants aggravated her injuries from the stroke. On this record, this Court denied Defendants' motions for partial summary judgment. Defendant Singh now moves for reconsideration of that Order.

II. Standard

Defendant Singh asks this Court to reconsider its Order pursuant to Local Civil Rule 7.1(i). The Local Rule provides for a motion for reconsideration to address facts and law "overlooked" in the earlier order. See also United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994). The Order Singh asks this Court to reconsider resolved his motion for partial summary judgment. While considering that motion, the Court viewed all

4

facts in the light most favorable to the Zurgas, as the non-moving parties.  See Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The Zurgas were also afforded all reasonable inferences that could be drawn from those facts.  Id.  Accordingly, this Court will review Singh's pending motion for facts or law overlooked in the earlier order.  However, the facts will be viewed in the light most favorable to the Zurgas, who will also be afforded all reasonable inferences therein.

III. Analysis

Defendant Singh argues that the Court made factual errors that led to the legally incorrect conclusion that a jury could find Singh's conduct was the proximate cause of Plaintiff's injuries.

Singh asserts first that Plaintiff's symptoms did not begin at 7:30 a.m., as this Court assumed both here and in its Opinion accompanying the Order of April 24, 2007.  The basis of this objection is twofold.  First, Plaintiff's distress was first reported by her child; thus, the child may have waited before alerting to the other adults.  Second, Plaintiff may have been discovered by her child when she was already exhibiting symptoms; thus, the symptoms would have begun earlier.

This appears, however, to be gratuitous protest of the

5

Court's version of the facts.  It is undisputed that it was at 7:30 a.m. when Plaintiff's symptoms were first reported.  It is well-settled law that on a motion for summary judgment the facts are viewed in the light most favorable to the non-moving party, and the non-moving party is granted all favorable inferences that derive from those facts.  See Hunt, 526 U.S. at 552.  Based on this elementary principle of law, the Court granted Plaintiff the reasonable inference that the onset of her symptoms coincided with the first observation and report of her symptoms.  Singh is free to argue to the jury a contrary inference.  At the present time, however, Singh does not direct the Court to evidence or law that it overlooked in reaching its initial conclusion that, for purposes of the motion, Plaintiff's symptoms began at 7:30 a.m.  Accordingly, this alleged error is not a grounds for reconsidering this Court's earlier Order.[1]

Defendant Singh's next grounds for reconsideration is his contention that the Court incorrectly characterized an issue in dispute as "whether or not the administration of tPA could have been given before 10:30 a.m."  This Court resolved that question by noting that it was in dispute, and thus not appropriate for summary judgment.  The evidence in Plaintiff's favor showed that Singh claimed to be too far from the hospital to respond in

---

[1] The Court agrees that its Opinion erroneously stated that Plaintiff was brought to the hospital at approximately 7:30 a.m.  The record before this Court shows that it was 8:00 a.m.

6

enough time to examine Plaintiff when, in fact, he was close by. The Court concluded that because Singh was close by, accepting Plaintiff's evidence, Plaintiff was entitled to the inference that Singh could have examined Plaintiff and administered tPA before 10:30 a.m.

Singh prefers the Court address the question of "whether or not the administration of tPA could have been given before 10:30 a.m." in two steps.  First, resolving whether Singh deviated from the standard of care; second, whether any deviation by Singh proximately caused Plaintiff's injuries.  Singh contends that, without a doubt, the second question must be answered in the negative, entitling Singh to summary judgment on Plaintiff's claims.  Presumably, then, it was the Court's characterization of the issue as one question that led the Court to erroneously conclude that Singh was not entitled to summary judgment.  The Court will now re-examine the issue through Singh's preferred framework.

The first question posed by Singh is whether he deviated from the standard of care.  Singh does not dispute that he did not arrive at the hospital within thirty minutes.  Rather, he states, that if he had "arrived at the hospital in thirty minutes after being called, then he would abide by the standard of care." Defendant's Brief at 5.  But, as explained below, the record supports a conclusion that Singh deviated from the standard of

7

care. The second question in Singh's characterization of the issue is whether that deviation was a proximate cause of Plaintiff's injuries. Defendant Singh contends that it was not, because, had he arrived within thirty minutes, he would have still been too late to administer tPA to Plaintiff. This, Singh contends, is what this Court overlooked in concluding that Singh was not entitled to summary judgment. Upon closer examination, however, it is evident that Singh's argument is premised on two basic flaws.

Singh's argument is based first upon the belief that he was called to examine Plaintiff at 10:05 a.m. The Court has accepted Plaintiff's evidence for the purposes of these motions and concluded Singh was called at 10:00 a.m. While some evidence does suggest that Singh was called at 10:05 a.m., see Pl.'s Br. [Doc. 49 at 8], the evidence in Plaintiff favor reveals that Singh was called at 10:00 a.m. This includes the testimony of Cascarino, (Pl.'s Opp. Ex. D at 75:18-20), and the hospital's records, (see id. Ex. I at 5, 13). Again, it is elementary that on a motion for summary judgment the evidence is viewed in the light most favorable to the non-moving party. Hunt, 526 U.S. at 552. Thus, this Court must conclude for the purposes of this motion that Singh was called at 10:00 a.m. The Court cannot do what Singh accuses it of doing, misreading the record.

Singh's second flaw is his characterization of his duty as

8

it is expressed in the standard of care.  Singh contends his duty, under the standard of care, was to arrive at the hospital within thirty minutes.  That is too simplistic a characterization.  The standard of care and hospital policy required Singh to respond within no <u>more</u> than thirty minutes; not, no <u>less</u> than thirty minutes.  Indeed, the standard of care required Singh to respond in a <u>timely manner</u> that could not exceed thirty minutes.  (Pl.'s Opp. Ex. E at 6).  Singh's characterization of his duty suggests that if Singh, although on call, was actually in the emergency room lobby when he was summoned, he could have sat down and read a magazine or had a cup of coffee for thirty minutes and still complied with his duty.  That notion offends both commonsense and the law.  If Singh was in fact in Cape May Courthouse and only minutes from the hospital than he had the duty to respond in a timely manner.  The jury is free to infer, and Singh offers no contrary evidence, that a timely response to the 10:00 a.m. call would have brought Singh to the hospital early enough to treat Plaintiff.

It should now be apparent why Singh's focus on the second element of his two-step approach is misplaced.  The answer to the question is the same, whether characterized as "whether or not the administration of tPA could have been given before 10:30 a.m." or as Singh's bifurcated approach.  Both approaches focused on proximate cause: whether tPA could have been administered to

9

mitigate Plaintiff's injuries from the stroke.  Certainly the record before this Court supports a conclusion that Singh deviated from the standard of care when he failed to respond to Cascarino's call in a timely manner.  Second, there is evidence in the record that Singh was nearby when summoned and from this evidence a reasonable jury could infer that a timely response would have been early enough to administer tPA to Plaintiff and mitigate the stroke's impact.  Accordingly, because Singh has not presented evidence or law overlooked by this Court in its Order of April 24, 2007, Singh's motion for reconsideration will be denied.

IV.  Conclusion

   For the reasons stated above, Defendants Singh's motion for reconsideration is denied.  An appropriate Order will issue this date.

>                        s/Renée Marie Bumb
>                        RENÉE MARIE BUMB
>                        United States District Judge

Dated: June 14, 2007